UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

RUDOLPHUS BOANS, JR.,

                      Plaintiff,

          v.

TOWN OF CHEEKTOWAGA,
TOWN OF CHEEKTOWAGA POLICE
  DEPARTMENT,
POLICE OFFICER BRIAN R. GRAY, and
JAMES DAVIS,

                  Defendants.
_____

TOWN OF CHEEKTOWAGA, TOWN OF
CHEEKTOWAGA POLICE DEPARTMENT,
and POLICE OFFICER BRIAN R. GRAY,

                Cross-Claimants,

          v.

JAMES E. DAVIS,

                Cross-Defendant.
_____

                              REPORT
                           and
                RECOMMENDATION

                09-CV-00037A(F)

APPEARANCES:        JAMES OSTROWSKI, ESQ.
                      Attorney for Plaintiff
                      63 Newport Avenue
                      Buffalo, New York  14216

                      DAMON MOREY LLP
                      Attorneys for Defendants and
                        Cross-Claimants
                      MARYLOU KATHRYN ROSHIA, of Counsel
                      200 Delaware Avenue
                      Suite 1200
                      Buffalo, New York  14202

## JURISDICTION

This case was referred to the undersigned by Honorable Richard J. Arcara on September 2, 2009, for all pre-trial matters, including preparation of a Report and Recommendation on dispositive motions. The matter is presently before the court on Defendants' First Motion for Summary Judgment (Doc. No. 32), filed June 29, 2012.

## BACKGROUND

Plaintiff Rudolphus Boans, Jr. ("Plaintiff" or "Boans"), commenced this civil rights action on December 12, 2008, by filing a complaint in New York Supreme Court, Erie County, alleging Defendants Town of Cheektowaga ("Town"), Town of Cheektowaga Police Department ("Cheektowaga police" or "police"), and Cheektowaga Police Officer Brian R. Gray ("Officer Gray") ("Defendants"), subjected Plaintiff to false arrest, unlawful arrest, unlawful imprisonment, and malicious prosecution in violation of New York law, and deprivation of liberty in violation of Plaintiff's rights under the Fourth, Fifth, Seventh, Eighth, and Fourteenth Amendments.[1] Plaintiff's claims arise from a September 15, 2007 motor vehicle accident ("the accident"), in which Plaintiff, while seated at the wheel of his vehicle in the drive-thru lane of a McDonald's restaurant located in Cheektowaga, New York, was struck by a rental vehicle driven by one James Davis ("Davis"). Because the damage to Plaintiff's vehicle rendered the vehicle unable to be driven, a tow truck was called and an inventory search prior to towing the vehicle yielded

---

[1] Plaintiff also asserted as his Second and Third Causes of Action a personal injury and negligent hiring claims against Davis, Sovran Self Storage, Inc., Sovran Acquisition Limited Partnership, and Sovran Holdings, Inc. By Text Order entered July 13, 2009 (Doc. No. 9), Plaintiff stipulated to discontinue the Second and Third Causes of Action, and Sovran Self Storage, Inc., Sovran Acquisition Limited Partnership, and Sovran Holdings, Inc., were terminated as defendants. Although the sole remaining First Cause of Action was not asserted against Davis, he was not terminated as a Defendant. The court further notes the Answer bears a heading for New York Supreme Court, Erie County, and dated January 2, 2009, strongly indicating the Answer was prepared for filing in state court.

contraband, for which Plaintiff was arrested and prosecuted, with the criminal action dismissed prior to trial.  On January 12, 2009, Defendants removed the action to this court citing 28 U.S.C. §§ 1331, 1441, and 1443 as the basis for subject matter jurisdiction.  On August 27, 2009, Defendants filed their answer (Doc. No. 14) ("Answer"), asserting, pursuant to N.Y. Civ.Prac.L.&R. Art. 1400, cross-claims for contribution against James E. Davis ("Davis"), Locke Leasing, LLC, Sovran Self Storage, Inc., Sovran Acquisition Limited Partnership, and Sovran Holdings, Inc., who had been named as defendants to this action, yet dismissed.

On June 29, 2012, Defendants filed a motion for summary judgment (Doc. No. 32) ("Defendants' Motion"), seeking to dismiss the Complaint.  Defendants' Motion is supported by the attached Affidavit of Marylou K. Roshia, Esq. (Doc. No. 32-1) ("Roshia Affidavit"), exhibits A through L (Doc. No. 32-2) ("Defendants' Exh(s). __"), the Memorandum of Law in Support of Defendants' Motion for Summary Judgment (Doc. No. 32-3) ("Defendants' Memorandum"), and Rule 56 Statement (Doc. No. 32-4) ("Defendants' Rule 56 Statement").  In opposition to summary judgment, Plaintiff filed on August 31, 2012, Plaintiff's Memorandum of Law in Opposition to Summary Judgment (Doc. No. 35) ("Plaintiff's Memorandum"), and Plaintiff's Rule 56 Statement (Doc. No. 36) ("Plaintiff's Rule 56 Statement"), and, on September 12, 2012, Plaintiff's Affidavit in Opposition to Summary Judgment (Doc. No. 38) ("Plaintiff's Affidavit").  On September 14, 2012, Defendants filed the Reply Memorandum of Law in Support of Defendants' Motion for Summary Judgment (Doc. No. 39) ("Defendants' Reply").  Oral argument was deemed unnecessary.

Based on the following, Defendants' Motion should be GRANTED in part and DENIED in part.

## <u>FACTS</u>[2]

On September 15, 2007, at 12:30 A.M., Plaintiff Rudolphus Boans, Jr. ("Plaintiff" or "Boans"), seated in the driver's seat of his vehicle ("Plaintiff's vehicle"), with one Gale Matthews-Benson ("Matthews-Benson"), in the front passenger seat, was in the drive-thru lane of a McDonald's restaurant located at 1735 Walden Avenue, in Cheektowaga, New York, when James E. Davis ("Davis"), operating a van owned and leased from Uncle Bob's Storage ("Davis's vehicle"), struck the passenger side of Plaintiff's vehicle, causing extensive damage and rendering Plaintiff's vehicle inoperable. Cheektowaga police were contacted and Officers Gray and Spieler[3] responded to the scene of the accident. Officer Gray detected the scent of alcohol on Davis's breath, and Davis admitted he had been drinking. Officer Gray requested identification from Davis, who advised he had given his wallet, containing his driver's license, social security card, bank debit card, and personal papers, as well as the keys to his vehicle to Plaintiff and Matthews-Benson who had requested them because of the collision. Officer Spieler asked Plaintiff and Matthews-Benson for Davis's property, but Plaintiff and Matthews-Benson denied having them. Davis's vehicle and his person were searched by Officers Gray and Spieler both at the scene of the accident and, later, at the Cheektowaga Police Station, but Davis's property was not found, nor was the property located by a

---
[2] Taken from the pleadings and motion papers filed in this action.
[3] Cheektowaga Police Officer Spieler is not a defendant to this action.

search of the restaurant's parking lot and dumpster.  Davis stated to the police he wanted Plaintiff and Matthews-Benson prosecuted for theft of his property.

Because Plaintiff's vehicle was inoperable, a tow truck was called and, pursuant to Cheektowaga Police General Order O-5-8 (Towing and Impounding) policy ("Tow Policy"),[4] Officers Gray and Spieler conducted an inventory search of Plaintiff's vehicle before it was towed.  As relevant, the Tow Policy provides the Cheektowaga police "may direct the removal of . . . [d]isabled vehicles at the scene of an accident upon a public roadway."  Tow Policy, Circumstances.  Further, where the "[v]ehicle is not being towed pursuant to an arrest or a violation of law or statute or for police investigation," the vehicle's driver or owner shall not be prohibited "from contracting with any tow company of his choice."  *Id.*  Further,

> An inventory will be conducted on all vehicles towed at the direction of a police officer unless a vehicle is to be . . . privately towed . . ..  The inventory will be conducted on scene, before the vehicle is towed, unless safety concerns dictate otherwise.

*Id.*, Inventory ¶ 1.

The Tow Policy also specifically provides that in conducting an inventory search of a vehicle in preparation for towing, "[a]ll closed unlocked containers will be opened and inventoried."  *Id.*, Inventory ¶ 4.  It is undisputed that Plaintiff's vehicle was to be towed because it was disabled, and that Plaintiff was not invited by any police officer to make his own arrangements for the vehicle's tow.

According to the Police Report prepared by Officer Gray ("Police Report"),[5] during the inventory search of Plaintiff's vehicle, Officer Spieler found in the vehicle's glove compartment a prescription medication bottle, for which the label indicated the

---

[4] A copy of the Tow Policy is filed as Defendants' Exh. J.
[5] A copy of the Police Report is filed as Defendants' Exh. G.

contents were 600 milligrams of ibuprofen prescribed for Plaintiff. When the prescription bottle was found, Plaintiff and Matthews-Benson became agitated, and yelled at the police officers that they had no right to search Plaintiff's vehicle, asserting Plaintiff and Matthews-Benson were activists and that the police officers were violating their civil rights, to which the police officers explained they were conducting an inventory search of Plaintiff's vehicle in preparation for its tow, which was in accordance with the Tow Policy. The disruptive behavior of Boans and Matthews-Benson prompted Officer Gray to contact Sergeant Grant in anticipation of further difficulties dealing with Boans and Matthews-Benson. Meanwhile, Davis continued to insist to Officer Spieler that Davis wanted Boans and Matthews-Benson to be prosecuted for taking Davis's personal property. Sergeant Grant arrived and advised Boans and Matthews-Benson that it was necessary for them to return Davis's property to Davis. When Boans and Matthews-Benson continued to insist they did not have Davis's property, Boans was placed in custody and transported to Cheektowaga Police Headquarters ("Police Headquarters"). Matthews-Benson, who was not arrested at the same time, remained at the scene of the accident.

The Police Report also states that at Police Headquarters, Detention Officer W. Hay ("Officer Hay"), conducted intake of Plaintiff who placed into his personal property box Plaintiff's own property, as well as the key to the ignition of Davis's vehicle. Officer Gray noticed the key and questioned Plaintiff about it, and Plaintiff denied being aware the key to Davis's vehicle was in Plaintiff's possession. Also during intake, the prescription bottle that Officer Spieler discovered in the glove compartment of Plaintiff's vehicle was opened and its contents examined. In addition to the ibuprofen, the bottle

contained three Lortab tablets, containing hydrocodone, a controlled substance. Matthews-Benson was then arrested and transported to Police Headquarters.

Meanwhile, because the disruptive behavior of Plaintiff and Matthews-Benson had prevented completion of the inventory search of Plaintiff's vehicle at the accident scene, Plaintiff's vehicle was towed to Davron Collision's Tow Lt ("the tow lot"), where the inventory search was completed by Police Officer E. DeVincentis ("Officer DeVincentis"), who found a wallet wedged between the dashboard and the "A-pillar," *i.e.*, the frame surrounding the vehicle's front windshield. Officer DeVincentis notified Officer Gray of the discovery, and Officer Gray responded to the tow lot and photographed the wallet before removing it from the dashboard.[6] Officer Gray returned to Police Headquarters where Davis positively identified the wallet as his, and the wallet was returned to Davis. After Plaintiff was processed at police headquarters, he was transported to the Erie County Holding center, where he was held for three days.

A statement given by Davis was taken by Officer Spieler ("Davis's Statement").[7] According to Davis, following the accident, Davis exited his vehicle and approached Plaintiff's vehicle to check on the driver and his passenger. Davis's Statement at 1. Davis further states

> I wasn't thinking straight at the time but I gave the driver of the van, later identified to me by the police as [Plaintiff],[8] my wallet and truck key. My wallet had all my identification and my bank/credit card in it. I watched [Plaintiff] after I gave him the key and he walked around with it, I thought he was going to write down my information for the accident but he never did. A women [*sic*] later identified to me by the police as [Matthews-Benson] was in the van and could

---

[6] Defendants submit in support of summary judgment photographs of Plaintiff's vehicle, taken from outside the vehicle, depicting a wallet laying on the vehicle's dashboard near the A-pillar, and clearly visible through the vehicle's front, driver's side window located just past the A-pillar. Defendants' Exh. H, Doc. No. 32-2 at 80, 88. It is not clear from the record whether these photographs were taken at the accident scene or at the tow lot.

[7] A copy of Davis's Statement is filed as Defendants' Exh. L.

[8] Unless otherwise indicated, all bracketed material is added.

have taken my wallet as well.  Neither of them ever came back to me with my wallet.  I want them both arrested for taking my wallet.

Davis's Statement at 1.

Based on the discovery in Plaintiff's vehicle of the Lortab, Plaintiff and Matthews-Benson were charged with criminal possession of a controlled substance.  Plaintiff and Matthews-Benson were also charged with grand larceny in the 4th degree - possession of stolen property, in violation of N.Y. Pen. Law § 155.30-04, based on the discovery of Davis's wallet in Plaintiff's vehicle and the key to Davis's vehicle in Plaintiff's possession.  All criminal charges against both Plaintiff and Matthews-Benson were subsequently dismissed by Cheektowaga Town Court on December 4, 2007.  In their depositions taken in connection with the instant action, Officer Gray and Officer Spieler gave statements indicating Plaintiff was arrested at the scene of the accident based on the discovery of the Lortab, rather than for the theft of Davis's property.  *See* Officer Gray Dep. Tr.[9] at 14 and 26-27; and Officer Spieler Dep. Tr.[10] at 23, 53-54.

## DISCUSSION

## 1.    Summary Judgment

Defendants move for summary judgment, seeking to dismiss the First Cause of Action, and, thereby, all claims for relief against Defendants.  Summary judgment of a claim or defense will be granted when a moving party demonstrates that there are no genuine issues as to any material fact and that a moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) and (b); *Celotex Corp. v. Catrett*, 477 U.S. 317,

---

[9] References to "Officer Gray Dep. Tr. __" are to pages of the transcript of the deposition of Officer Gray, portions of which are filed as Defendants' Exh. E.
[10] References to "Officer Spieler Dep. Tr. __" are to pages of the transcript of the deposition of Officer Spieler, portions of which are filed as Defendants' Exh. F.

322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51 (1986); *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir. 2003). The court is required to construe the evidence in the light most favorable to the non-moving party. *Collazo v. Pagano*, 656 F.3d 131, 134 (2d Cir. 2011). The party moving for summary judgment bears the burden of establishing the nonexistence of any genuine issue of material fact and if there is any evidence in the record based upon any source from which a reasonable inference in the non-moving party's favor may be drawn, a moving party cannot obtain a summary judgment. *Celotex*, 477 U.S. at 322; *see Anderson*, 477 U.S. at 247-48 ("summary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party"). "A fact is material if it 'might affect the outcome of the suit under governing law.'" *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008) (quoting *Anderson*, 477 U.S. at 248).

"[T]he evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions." *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988)). A defendant is entitled to summary judgment where "'the plaintiff has failed to come forth with evidence sufficient to permit a reasonable juror to return a verdict in his or her favor on'" an essential element of a claim on which the plaintiff bears the burden of proof. *In re Omnicom Group, Inc., Sec. Litig.*, 597 F.3d 501, 509 (2d Cir. 2010) (quoting *Burke v. Jacoby*, 981 F.2d 1372, 1379 (2d Cir. 1992)). Once a party moving for summary judgment has made a properly supported showing as to the absence of any genuine issue as to all material facts, the nonmoving party must, to defeat summary judgment, come forward with evidence that

would be sufficient to support a jury verdict in its favor. *Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir. 1995). "[F]actual issues created solely by an affidavit crafted to oppose a summary judgment motion are not 'genuine' issues for trial." *Hayes v. New York City Dept. of Corrections*, 84 F.3d 614, 619 (2d Cir. 1996).

## 2.    Civil Rights Claims

Insofar as Defendants are alleged to have violated Plaintiff's civil rights, pursuant to 42 U.S.C. § 1983, an individual may seek damages against any person who, under color of state law, subjects such individual to the deprivation of any rights, privileges, or immunities protected by the Constitution or laws of the United States. 42 U.S.C. § 1983. Section 1983, "allows an action against a 'person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws.'" *Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, 225 (2d Cir. 2004) (quoting 42 U.S.C. § 1983). Section 1983, however, "'is not itself a source of substantive rights.'" *Patterson*, 375 F.3d at 225 (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)). Rather, § 1983 "merely provides 'a method for vindicating federal rights elsewhere conferred'. . . ." *Id.* The elements of a § 1983 claim include (1) the deprivation of a federal constitutional or statutory right, and (2) by a person acting under color of state law. *Velez v. Levy*, 401 F.3d 75, 84 (2d Cir. 2005) (citing *Gomez v. Taylor*, 466 U.S. 635, 640 (1980)). Thus, "[t]he first step in any such claim is to identify the specific constitutional right allegedly

infringed." *Id.* (citing *Graham v. Connor*, 490 U.S. 386, 394 (1989); and *Baker*, 443 U.S. at 140).

Here, Plaintiff alleges Defendants subjected him to an unlawful search, unlawful arrest, unlawful imprisonment, malicious prosecution, and deprivation of liberty in violation of his Fourth, Fifth, Sixth, Seventh, Eighth, and Fourteenth Amendment rights. It is undisputed that the search of Plaintiff's vehicle, and Plaintiff's arrest and prosecution on the criminal charges was conduct undertaken pursuant to state law. As such, Plaintiff's civil rights claims are sufficiently alleged.

**3.      Town and Cheektowaga Police**

Defendants argue all claims against the Town and Cheektowaga police should be dismissed because neither the Town, nor the Cheektowaga police, as an administrative arm of the Town, can be vicariously liable solely on the basis of *respondeat superior*. Defendants' Memorandum at 4-5. In opposition, Plaintiff asserts that the Tow Policy was not followed because Plaintiff was not given the opportunity to contract with the tow company of his choice, Plaintiff's Memorandum at 2-4, and, without referencing any supporting caselaw, that "[t]he Town is liable for the actions of its employees acting within the scope of their employment for any state law causes of action." *Id.* at 5. Plaintiff does not, however, assert any argument opposing summary judgment in favor of Cheektowaga police. In further support of summary judgment, Defendants argue that although Plaintiff asserts the Tow Policy was not followed, Plaintiff has not challenged the Tow Policy as unconstitutional. Defendants' Reply at 3-4.

Because a police department is an administrative arm of the municipal corporation, *Loria v. Town of Irondequoit*, 775 F.Supp. 599, 600 (W.D.N.Y. 1990), a police department does not exist separate and apart from the municipality and does not have its own legal identity and, thus, cannot sue or be sued. *Loria*, 775 F.Supp. at 606. Accordingly, summary judgment should be GRANTED as to all claims against the Cheektowaga police.

With regard to the claims against the Town, it is settled that municipalities may not be held liable under § 1983 solely on the basis of *respondeat superior* unless the alleged "deprivation of the plaintiff's rights under federal is caused by a governmental custom, policy, or usage of the municipality." *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012) (citing *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978)). "Absent such a custom, policy, or usage, a municipality cannot be held liable on a respondeat superior basis for the tort of its employee. *Jones*, 691 F.3d at 80 (citing *Monell*, 436 U.S. at 691). "[I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." *Board of County Commissioners of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 404 (1997). As such, municipal liability may be found "when the execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible for under § 1983." *Monell*, *supra*, at 691.

Here, Plaintiff has not alleged that the Tow Policy pursuant to which the inventory search of Plaintiff's vehicle was conducted was unconstitutional; rather, Plaintiff argues that the Tow Policy was not properly followed because Plaintiff was not permitted to call

a tow truck of his choosing which, according to the Tow Policy, would have negated the need for the Cheektowaga police to conduct an inventory search. *See* Tow Policy, Inventory (requiring inventory search of all vehicles towed at direction of police "unless a vehicle is . . . privately towed . . .."). As such, there is no undecided issue of material fact as to whether the Tow Policy is constitutional. Nor has Plaintiff alleged, or presented any evidence, that the Cheektowaga police regularly disregards its own Tow Policy by failing to invite the owner of a disabled vehicle to contract with a tow company of the owner's choice as permitted under the Tow Policy, such that the disregard of the Tow Policy is a custom or general policy of the Cheektowaga police. Plaintiff has further failed to allege that under such circumstances, *i.e.*, in which the Cheektowaga police would routinely conduct an inventory search of vehicles for which the owner has contracted with a tow company for a private tow, such inventory search would constitute a constitutional violation. This fact is significant as once a party moving for summary judgment has made a properly supported showing as to the absence of any genuine issue as to all material facts, the nonmoving party must, to defeat summary judgment, come forward with evidence that would be sufficient to support a jury verdict in its favor. *Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir. 1995). Further, in opposing a motion for summary judgment a party "may not simply rely on conclusory statements or on contentions that the affidavits supporting the motion are not credible." *Goenega*, *supra,* at 18 (citing cases).

Accordingly, Plaintiff has failed to establish the requisite unconstitutional custom or practice necessary to subject the Town to vicarious liability based on the conduct of Officer Gray in searching Plaintiff's vehicle, even if Officer Gray violated the Tow Policy

by failing to advise Plaintiff of his right to privately contract for the removal of his disabled vehicle from the drive-thru lane of the McDonald's Restaurant.[11]  Summary judgment on this aspect of Plaintiff's claims, *i.e.*, as against the Town and Cheektowaga police, should be GRANTED.

**4.      Seventh Amendment**

Although Plaintiff asserts his claims as alleging violations of the Seventh Amendment, Complaint ¶ 15, and Defendants seeks summary judgment on the action in its entirety, Defendants' Memorandum at 17, Defendants have not presented any argument in support of dismissal of Plaintiff's Seventh Amendment claim. Defendants do not set forth a specific argument for dismissing Plaintiff's Seventh Amendment claim, yet the claim nevertheless should be dismissed as without any factual or legal basis.  In particular, the Seventh Amendment provides for the right to a trial by jury in civil actions at common law.  U.S.Const., Amend. VII.  As to the criminal charges lodged against Plaintiff as a result of the September 18, 2009 search of his vehicle were dismissed by the Cheektowaga Town Court, however, Plaintiff never went to trial on such charges, rendering any Sixth Amendment claim, if that is what Plaintiff intended to allege, without factual support and subject to *sua sponte* dismissal.  *See Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992) ("[A] finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them."); and *Neitzke v. Williams*, 490 U.S. 319, 320 (1989) (observing complaint filed *in*

---

[11] The court notes Plaintiff does not assert that he requested, but was denied, the opportunity to privately arrange for his vehicle to be towed, as permitted under the Tow Policy.

*forma pauperis* which not only fails to state a claim, but "lacks even an arguable basis in law," may be *sua sponte* dismissed as frivolous).  Alternatively, construing Plaintiff's assertion of the Seventh Amendment as Plaintiff's attempt to preserve his right to a jury trial, such assertion is not a claim that needs to be addressed as summary judgment does not violate the Seventh Amendment.  *See Russo v. Keough's Turn of the River Hardware, LLC*, __ Fed.Appx. __, 2013 WL 3455531, at * 2 (2d Cir. July 10, 2013) (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 336 (1979) (observing summary judgment is one of  "many procedural devices developed since 1791 that . . . have been found not to be inconsistent with the Seventh Amendment." (citing *Fidelity & Deposit Co. v. United States*, 187 U.S. 315, 219-21 (1902)); and *Calvi v. Knox County*, 470 F.3d 422, 427 (1st Cir. 2006) ("a grant of summary judgment does not compromise the Seventh Amendment's jury trial right because that right exists only with respect to genuinely disputed issues of material fact.")).  Summary judgment on Plaintiff's Seventh Amendment claim is GRANTED.

5.     **Eighth Amendment**

Plaintiff asserts Defendants violated his Eighth Amendment rights.  Complaint ¶ 15.  Although Defendants seek dismissal of this claim as without factual support because Plaintiff does not allege he was injured or denied medical care while in custody, Plaintiff gave an interrogatory response denying he was making a claim for any physical injury, and insofar as the Eighth Amendment proscribes excessive bail, none of the Defendants had any control over the amount of bail set.  Defendants' Memorandum at 5-6.  Plaintiff presents no argument in opposition to summary judgment in support of

his Eighth Amendment claim. As such, the court may deem such claims abandoned. *Kuebel v. Black & Decker (U.S.) Inc.*, 2010 WL 1930659 at * 1 (W.D.N.Y. May 12, 2010) (citing *Taylor v. City of New York*, 269 F.Supp.2d 68, 75 (E.D.N.Y. 2003) ("Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way." (citing *Douglas v. Victor Capital Group*, 21 F.Supp.2d 379, 393 (S.D.N.Y. 1998) (holding where defendant's summary judgment papers specifically address employment discrimination claims raised in complaint, and plaintiff's opposition papers fail to respond to such arguments, court may deem all such claims abandoned and grant summary judgment as to such claims, collecting cases)))); *Dineen v. Stramka*, 228 F.Supp.2d 447, 454 (S.D.N.Y. 2002) (holding that plaintiff's failure to address claims in papers filed in opposition to summary judgment "enabl[es] the Court to conclude that [plaintiff] abandoned them"); *Anti-Monopoly, Inc. v. Hasbro, Inc.*, 958 F.Supp. 895, 907 n. 11 (S.D.N.Y.) (dismissing with prejudice on summary judgment motion claim for which plaintiff failed to provide any argument in opposition to defendant's motion), *aff'd*, 130 F.3d 1101 (2d Cir. 1997). Alternatively, Plaintiff's Eighth Amendment claim should be dismissed on the merits.

In particular, the Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S.Const. Amend. VIII. Insofar as Plaintiff is alleging a violation of the Eighth Amendment's bail or fines provisions, or inhumane conditions of confinement, not only has Plaintiff failed to allege any facts in support of such claim, but Defendants assert, and Plaintiff does not dispute, that no Defendant was involved in setting or bail or

imposing any fines or conditions of confinement, such that the claim is without factual support.  Further, the Eighth Amendment does not apply to pretrial detainees regarding issues of bail or conditions of confinement; rather, constitutional claims by pretrial detainees instead are analyzed under the Due Process Clause of the Fourteenth Amendment.  *Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996).  As such, summary judgment on Plaintiff's Eighth Amendment claim should be GRANTED.

**6.     Fourth Amendment**

Defendants argue in support of summary judgment on Plaintiff's Fourth Amendment claim, alleging unlawful search, false arrest, and malicious prosecution, that Officer Gray's actions were reasonable under all the circumstances, that the search of Plaintiff's vehicle was an inventory search for which no warrant or probable cause was required, and that the discovery of controlled substances during the inventory search provided the requisite probable cause to support Plaintiff's arrest, imprisonment, and malicious prosecution.  Defendants' Memorandum at 6-8.  In opposition to summary judgment, Plaintiff argues Defendants have failed to establish the absence of any genuine issue of material fact regarding the legality of the inventory search of Plaintiff's vehicle and subsequent arrest of Plaintiff.  Plaintiff's Memorandum at 1-3.  In further support of summary judgment, Defendants argue Plaintiff has failed to assert more than a "cursory response" that fails to provide any basis for denying Defendants' motion, Defendants' Reply at 1-2, and that Plaintiff does not dispute that Officer Gray acted reasonably, or that Plaintiff was arrested and prosecuted without probable cause. *Id.* at 4.

Preliminarily, insofar as Plaintiff interprets Defendants' arguments in support of summary judgment as referencing the "exclusionary rule/fruit of the poisonous tree doctrine" in discussing Plaintiff's Fourth Amendment claims, Plaintiff's Memorandum at 3, the fruit of the poisonous tree doctrine is an extension of the exclusionary rule, applicable only in criminal actions, and neither the exclusionary rule nor the fruit of the poisonous tree doctrine may be invoked to support a § 1983 claim, *Townes v. The City of New York*, 176 F.3d 138, 145-46 (2d Cir. 1999) (citing *Pennsylvania Board of Probation and Parole v. Scott*, 524 U.S. 357, 364 n. 4 (1998)). As such, the exclusionary rule/fruit of the poisonous tree doctrines have no bearing on Plaintiff's Fourth Amendment claims for unlawful search and seizure.

Insofar as Plaintiff's Fourth Amendment claim can be construed as alleging that the search of his vehicle was not supported by probable cause, the court observes that such search was an inventory search for which probable cause is not required. *Colorado v. Bertine*, 479 U.S. 367, 373-74 (1987) (holding police regulation permitting a warrantless inventory search prior to towing a vehicle does not violate Fourth Amendment provided law enforcement officer conducting search follows standard procedure, and does not act in bad faith or solely for investigative purposes). Plaintiff provides no evidence demonstrating the existence of material issues of fact establishing Officer Gray acted contrary to these requisites necessary to negate the inventory search of Plaintiff's vehicle as an exception to the Fourth Amendment. Plaintiff's Fourth Amendment claim thus fails with regard to the search of his vehicle. Nevertheless, construing the Fourth Amendment claim as challenging whether Plaintiff's arrest was

supported by probable cause shows material issues of fact precluding summary judgment.[12]

In particular, according to the Police Report prepared by Officer Gray in connection with Plaintiff's arrest, Plaintiff was arrested at the scene of the accident based on Davis's continued complaints that Plaintiff and Matthews-Benson were in possession of Davis's personal property, *i.e.*, Davis's wallet containing his identification and his bank debit card, as well as the ignition key to the rental vehicle Davis had been operating at the time of the accident. Davis's Statement. Davis's Statement is consistent with the Police Report which provides, as relevant,

> [Davis] advised [Officer] Spieler that he was certain that [Boans] and [Matthews-Benson] had his property and insisted that [Davis] wanted to prosecute them for stealing it. [Officer] Spieler obtained a signed statement from [Davis]. Sgt. Grant responded and advised [Boans and Matthews-Benson] numerous times that it was necessary that [Davis's] property be returned. [Boans] and [Matthews-Benson] continuously insisted they did not have the property. [Boans] was placed into custody and transported to Police Headquarters. . . . During intake of [Boans], the contents of the prescription bottle of Ibuprofen was [*sic*] examined and found to contain 3 caplets of hydrocodone, a controlled substance.

Police Report at 2-3.

Significantly, the heading to the Police Report indicates the report pertains to an arrest for "Grand Larceny 4th." Police Report at 2. Thus, both Davis's Statement and the

---

[12] Although in his Memorandum of Law filed in opposition to summary judgment Plaintiff does not specifically oppose Defendants' argument that Plaintiff's arrest did not violate the Fourth Amendment, Plaintiff does reiterate this claim in his affidavit filed in opposition to summary judgment, stating that although Defendants maintain in support of summary judgment that Plaintiff was arrested based on the discovery of the narcotics, rather than for theft of Davis's property, the chronology of events as set forth in Officer Gray's Police Report indicates that the narcotics were not identified as such until after Plaintiff was taken into custody. Plaintiff's Affidavit ¶¶ 12-17. Accordingly, Plaintiff has not abandoned this claim. *See Taylor v. City of New York*, 269 F.Supp.2d 68, 75 (E.D.N.Y. 2003) ("Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument *in any way*." (italics added)); *Douglas v. Victor Capital Group*, 21 F.Supp.2d 379, 393 (S.D.N.Y. 1998) (where plaintiff's opposition papers "never even mention [ ] any retaliation claim in his brief *or affidavits* . . . the Court deems all of the remaining claims in the complaint to be abandoned, and recommends that defendants be granted summary judgment dismissing these claims." (italics added)). Plaintiff's statements in his affidavit prevent his Fourth Amendment unlawful arrest claim from being deemed abandoned.

Police Report indicate Plaintiff was arrested based on Davis's complaint that Plaintiff and Matthews-Benson had refused to return the wallet Davis gave to Plaintiff subsequent to the accident.[13]

In contrast, in their depositions taken in connection with the instant action, both Officer Gray and Officer Spieler gave statements indicating Plaintiff was arrested at the scene of the accident based on the discovery of the Lortab, rather than for the theft of Davis's property. *See* Officer Gray Dep. Tr. at 14 and 26-27 (stating Officer Gray discovered the Lortab inside the prescription bottle labeled as containing ibuprofen prescribed for Plaintiff at the scene of the accident, that both Plaintiff and Matthews-Benson denied ownership of the Lortab, that Matthews-Bensen was arrested at the scene of the accident based on the discovery of the Lortab, and that Officer Gray did not form his belief that Plaintiff stole Davis's property until Davis's wallet was discovered in Plaintiff's vehicle after the vehicle was towed to the tow lot, implying Plaintiff was also arrested for the Lortab discovery); and Officer Spieler Dep. Tr. at 23, 53-54 (stating Officer Spieler discussed with Officer Gray scene the discovery of the narcotics and the decision to arrest Plaintiff at the accident scene for possessing the narcotics, which Officer Spieler identified as Lortab both at the accident scene and later at Police Headquarters). The inconsistencies between the deposition testimony of Officers Gray and Spieler, compared to the Police Report and Davis's Statement, create a genuine issue of material fact as to the true reason for Plaintiff's arrest, as well as whether such arrest was supported by probable cause.

Specifically, if Plaintiff were arrested at the scene of the accident for possession of a controlled substance, the reason given by both Officers Gray and Spieler at their

---

[13] Under N.Y. Pen. Law § 155.05, withholding of personal property with intent to steal constitutes larceny.

depositions, such scenario is inconsistent with that portion of the contemporaneously filed Police Report that indicates the Lortab was not discovered in the prescription bottle until after Plaintiff was taken into custody and transported to Police Headquarters for intake. If, however, Plaintiff was arrested in connection with Davis's complaint that Plaintiff refused to return Davis's property, such scenario is inconsistent with the deposition testimony of Officers Gray and Spieler that Plaintiff was arrested based on the discovery of the Lortab at the accident scene, and is also inconsistent with Officer Gray's testimony that he did not credit Davis's theft complaint until the discovery of Davis's wallet in Plaintiff's vehicle after Plaintiff's vehicle was towed following Plaintiff's arrest for theft based on Davis's complaint.

These inconsistencies pose material issues of fact as to whether Plaintiff's arrest was supported by probable cause without which, should a reasonable jury so find, Plaintiff's arrest is in violation of the Fourth Amendment. Having determined Plaintiff has a viable Fourth Amendment unlawful seizure claim, the court next addresses whether Defendants are qualifiedly immune from liability on such claim. *County of Sacramento v. Lewis*, 523 U.S. 833, 841 n. 5 (1998) ("the better approach to resolving cases in which the defense of qualified immunity is raised is to determine first whether the plaintiff has alleged a deprivation of a constitutional right at all. Normally, it is only then that a court should ask whether the right allegedly implicated was clearly established at the time of the events in question."). *But see Distiso v. Cook*, 691 F.3d 226, 240 (2d Cir. 2012) (observing that "[w]hile sequential analysis promotes the development of constitutional precedent, where qualified immunity is clearly warranted at the second step of the analysis, courts may simply rule on that basis without

21

employing scarce judicial resources to resolve difficult and novel questions of constitutional or statutory interpretation that will have no effect on the outcome of the case." (quoting cases; internal citations and quotation marks omitted)).  Here, however, qualified immunity does not shield Defendants from liability on this claim.

In particular, "[q]ualified immunity shields 'government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *DiStiso*, 691 F.3d at 240 (quoting *Messerschmidt v. Millender*, __ U.S. __, 132 S.Ct. 1235, 1244 (2012)).  "Qualified immunity thus affords government officials 'breathing room' to make reasonable – even if sometimes mistaken – decisions, and 'protects all but the plainly incompetent or those who knowingly violate the law' from liability for damages."  *Id.* "Whether qualified immunity applies in a particular case 'generally turns on the objective legal reasonableness' of the challenged action, 'assessed in light of the legal rules that were clearly established at the time it was taken.'"  *Id.*

In the instant case, it is axiomatic at the time of Plaintiff's arrest on September 15, 2007, that such arrest had to be supported by probable cause.  *See Singer v. Fulton County Sheriff*, 63, F.3d 110, 118 (2d Cir. 1995) ("There can be no federal civil rights claim for false arrest where the arresting officer had probable cause.").  "Probable cause is established when the arresting officer has knowledge of reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested."  *Id.* at 119 (internal citations and quotation marks omitted).  Here, however, because it is not clear for which crime Plaintiff was arrested at the scene of the accident, it is not clear that Officer Gray had

probable cause for Plaintiff's arrest. Indeed, Officer Gray's deposition testimony that he did not believe Plaintiff had taken Davis's property until the Davis's wallet was found in Plaintiff's vehicle, after said vehicle had been towed to the tow lot, could reasonably be construed by a reasonable juror as establishing an absence of probable cause to arrest Plaintiff on the 4th degree Grand Larceny charge. Gray Dep. Tr. at 53-54. Alternatively, the Police Report prepared by Officer Gray states that Plaintiff was taken into custody in connection with Davis's complaint that Plaintiff stole his wallet and key, and the hydrocodone tablets were not discovered in the prescription bottle until after Plaintiff's arrest, reasonably supporting only an absence of probable cause to arrest Plaintiff on the criminal possession of a controlled substance charge. These discrepancies cannot be reconciled without weighing facts and choosing either one version of the events over the other, which could still allow for a determination Plaintiff's arrest was supported by probable cause, or discounting both versions, such that Plaintiff's arrest would not be supported by probable cause. *See Cioffi v. Averill Park Central School District Board of Education*, 444 F.3d 158, 162 (2d Cir. 2006) (when deciding a summary judgment motion in a civil case, all factual ambiguities must be resolved in the non-moving party's favor and the court may not weigh the evidence, but rather must only determine whether a genuine issue of fact exists for trial). Accordingly, summary judgment on Plaintiff's Fourth Amendment unlawful seizure claim should be DENIED.

With regard to Plaintiff's § 1983 malicious prosecution claim, the Second Circuit provides that "to prevail on a § 1983 claim against a state actor for malicious prosecution, a plaintiff must show a violation of his rights under the Fourth Amendment and establish the elements of a malicious prosecution claim under state law." *Fulton v.*

*Robinson*, 289 F.3d 188, 195 (2d Cir. 2002) (citing case). "To establish a malicious prosecution claim under New York law, a plaintiff must show that a proceeding was commenced or continued against him, with malice and without probable cause, and was terminated in his favor." *Id.* In the instant case, although the issue of probable cause supporting Plaintiff's arrest prevents summary judgment on Plaintiff's § 1983 false arrest claim, Plaintiff cannot prevail on his § 1983 malicious prosecution claim because he has failed to establish the underlying criminal action was terminated in his favor as is Plaintiff's burden.

Specifically, although it is undisputed that the criminal charges against Plaintiff were dismissed, the record is completely silent as to whether the criminal charges against Plaintiff were dismissed because of any determination on the merits in Cheektowaga Town Court that the inventory search and, subsequently, Plaintiff's arrest, were in violation of the Fourth Amendment; rather, Plaintiff simply asserts that the criminal charges lodged against him "were dismissed by the Cheektowaga Town Court," Complaint ¶ 17, and "[s]aid charges were dismissed on the merits in Cheektowaga Town Court on 12/4/07." Plaintiff's Response to Interrogatory[14] No. 9(d). This is significant because Plaintiff has not established that the underlying criminal proceedings were terminated in his favor and, thus, has failed to establish the second element of a malicious prosecution claim. *See Hygh v. Jacobs*, 961 F.2d 359, 368 (2d Cir. 1992) (because "[a] dismissal 'in the interest of justice' [pursuant to N.Y. Crim. Proc. Law § 170.40] is neither an acquittal of the charges nor any determination of the merits," but instead, "leaves the question of guilt or innocence unanswered," it cannot, "as a matter of law . . . provide the favorable termination required as the basis for a claim of

---

[14] A copy of Plaintiff's Responses to Interrogatories is filed as Defendants' Exh. C.

malicious prosecution."). *See also Singer v. Fulton County Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995) (""Termination in the interest of justice does not produce a favorable termination basis for a malicious prosecution claim."). Accordingly, because Plaintiff has not demonstrated that the criminal proceedings against him were resolved in his favor based on a determination on the merits, Plaintiff has not established the second element of a malicious prosecution claim under § 1983. Summary judgment on Plaintiff's § 1983 malicious prosecution claim should be GRANTED.

**7. Fifth and Fourteenth Amendment Due Process Claims**

Defendants move for summary judgment on Plaintiffs' due process claims brought under the Fifth and Fourteenth Amendments, asserting that such claim under the Fifth Amendment is redundant of the Fourteenth Amendment due process claim, which claim also has no merit because Officer Gray acted reasonably with regard to the inventory search of Plaintiff's vehicle, Plaintiff's arrest, imprisonment, and prosecution. Defendants' Memorandum at 4-8. Plaintiff does not directly challenge this point in opposition to summary judgment, only arguing instead that Defendants violated the Tow Policy which did not authorize the Cheektowaga police to tow Plaintiff's vehicle. Plaintiff's Memorandum at 1-3. In further support of summary judgment, Defendants take notice of Plaintiff's thin response, asserting "if plaintiff had meaningful opposition to the motion, he would have laid it out for the Court's consideration." Defendants' Reply at 2.

Preliminarily, insofar as Plaintiff's due process claim is brought under the Fifth Amendment, *Chew v. Dietrich*, 143 f3d 24, 28 n. 4. (2d Cir. 1998) ("the due process

analysis is basically the same under both the Fifth and Fourteenth Amendments."), "the [Supreme] Court has held that the due process clause of the Fifth Amendment prohibits federal action if the same action taken by a state would be proscribed under the Fourteenth Amendment." *United States Postal Service v. Brennan*, 574 F.2d 712, 717 n. 10 (2d Cir. 1978) (citing *Bolling v. Sharpe*, 347 U.S. 497 (1954)). In the instant case, however, Plaintiff challenges only actions taken by Defendants under New York law and, as such, Plaintiff alleges a violation of the Due Process Clause of the Fourteenth Amendment, but not the Fifth Amendment. Summary Judgment in favor of Defendants should be GRANTED insofar as Plaintiff alleges a Fifth Amendment due process violation.

As relevant, the Fourteenth Amendment provides that "[n]o state shall . . . deprive any person of life, liberty, or property, without due process of law . . . ." U.S. CONST. amend. XIV, § 1. A due process violation can be established by demonstrating that state action deprived Plaintiff of a property or liberty interest protected by the Fourteenth Amendment. *Velez*, 401 F.3d at 85.

Although Plaintiff argues his unlawful search claim as in violation of both the Fourth and Fourteenth Amendments, the Fourteenth Amendment is relevant to Plaintiff's unlawful search claim only inasmuch as the Fourteenth Amendment's Due Process Clause makes the Fourth Amendment applicable to Defendants as state actors. *Tenenbaum v. Williams*, 193 F.3d 581, 602 n. 14 (2d Cir. 1999) ("[t]he Fourth Amendment's search and seizure procedures are applicable to the [state] defendants through the Fourteenth Amendment's Due Process Clause." (citing *Mapp v. Ohio*, 367 U.S. 643, 655 (1961))). Further, "[w]here a particular Amendment provides an explicit

textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Albright v. Oliver*, 510 U.S. 266, 273 (1994). Accordingly, because the Fourth Amendment "provides an explicit textual source of constitutional behavior" against searches by law enforcement officials, Plaintiff's unlawful search claim cannot be analyzed under the Fourteenth Amendment. Nevertheless, insofar as Plaintiff alleges Officer Gray failed to follow the Tow Policy, *i.e.*, that Officer Gray did not permit Plaintiff to contract with a company of his choosing to tow his vehicle, as permitted under the Tow Policy, Tow Policy, Circumstances (providing that a vehicle's driver or owner shall not be prohibited "from contracting with any tow company of his choice" so long as the vehicle is not being towed pursuant to an arrest, and the tow company responds within a reasonable period of time given the traffic conditions and safety of the situation), Plaintiff is not asserting a violation of the Fourth Amendment but, rather, a violation of Fourteenth Amendment substantive due process.

As explained by the Supreme Court, under the Fourteenth Amendment,

"[t]he touchstone of due process is protection of the individual against arbitrary action of the government," *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974), "whether the fault lies in the denial of fundamental procedural fairness, *see*, *e.g.*, *Fuentes v. Shevin*, 407 U.S. 67, 82 (1972) (the procedural due process guarantee protects against 'arbitrary takings'), or in the exercise of power without any reasonable justification in the service of a legitimate governmental objective, *see*, *e.g.*, *Daniels v. Williams*, 474 U.S. 327, 331 (1986) (the substantive due process guarantee protects against government power arbitrarily and oppressively exercised). While due process protection in the substantive sense limits what the government may do in both its legislation, *see*, *e.g.*, *Griswold v. Connecticut*, 381 U.S. 479 (1965), and its executive capacities, *see*, *e.g.*, *Rochin v. California*, 342 U.S. 165 (1952), criteria to identify what is fatally arbitrary differ depending on whether it is legislation or a specific act of a government officer that is at issue.

*County of Sacramento v. Lewis*, 523 U.S. 833, 845-46 (1998).

When dealing with allegedly abusive executive action, "only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense. . . .'" *Id.* (quoting *Collins v. Harker Heights*, 503 U.S. 115, 129 (1992).

Here, Plaintiff argues Defendants "had no right to call a tow truck without complying first with their own department policy." Plaintiff's Affidavit ¶ 10. According to Plaintiff, Defendants violated the Tow Policy "by failing to allow [Plaintiff] to select [his] own towing service and by apparently failing to obtain the written permission of the property owner." *Id.* ¶ 11. Plaintiff further maintains that although Defendants assert Plaintiff was arrested following the discovery of the narcotics in Plaintiff's vehicle, rather than for theft of Davis's wallet, an unidentified police officer advised Plaintiff that if Davis's wallet was not found, Plaintiff would be arrested for its theft, *id.* ¶¶ 12-13, that Plaintiff was arrested "[s]hortly thereafter," *id.* ¶ 14, prior to the search of Plaintiff's vehicle and the discovery of the prescription bottle containing the Lortabs. *Id.* ¶ 15. Plaintiff further maintains his recollection of chronology of these events is consistent with Officer Gray's written police report, *id.* ¶ 16, which "report states that the drugs were identified only after [Plaintiff] was placed in custody." *Id.* ¶ 17 (citing Defendants' Exh. G, Doc. No. 32-2, pp. 73-74). Numerous difficulties render this argument without merit.

First, the Tow Policy specifically provides that the Cheektowaga police "may direct the removal of . . . [d]isabled vehicles at the scene of an accident upon a public roadway." Tow Policy, Circumstances. Although Plaintiff's vehicle was on private property – the drive-thru lane of a restaurant – "private roads open to public motor

vehicle traffic and any other parking lot" have been specifically incorporated into the definition of "public highways" on which drivers are to obey New York's vehicle and traffic laws. N.Y. Veh. & Traf. Law § 1100(a) ("§ 1100(a)"). Significantly, the provisions of N.Y. Veh. & Traf. Law § 1192, rendering it illegal to drive while intoxicated or under the influence of alcohol, have specifically adopted the same definition of "public roadway" used in § 1100(a), such that it is illegal to operate a motor vehicle while driving under the influence of alcohol or drugs upon private property open to public traffic. N.Y. Veh. & Traf. Law § 1192[7]. Under New York law, police officers are also specifically required to "immediately investigate" any accident resulting in damage to personal property in excess of $ 1,000. *Id.* §§ 603, 605. In the instant case, the police were requested to respond to the scene of the accident at the McDonald's restaurant drive-thru lane because Davis, who appeared to be intoxicated, had struck Plaintiff's vehicle, causing extensive damage.[15] As such, the Cheektowaga police were authorized to respond to the accident and, upon determining Plaintiff's vehicle was inoperable, to arrange for the vehicle to be towed.

Significantly, Plaintiff's assertion that he should have been advised of his right to privately contract with a tow service of his choice for the removal of Plaintiff's vehicle from the accident scene is without any evidentiary support in the record; rather, the Tow Policy simply states the circumstances in which vehicle is disabled

> at the scene of an accident upon a public roadway . . . shall not prohibit the driver or the owner of a vehicle from contracting with any tow company of his choice provided that:
> ➢ Vehicle is not being towed pursuant to an arrest or a violation of law or statute or for police investigation.

---

[15] The record does not indicate who reported the accident to the Cheektowaga police.

> ➤ The towing service contracted responds within a reasonable period of time as per the officer in charge of the scene, considering traffic conditions and the safety of those affected by the situation.

Tow Policy, Circumstances.

A plain reading of this provision establishes it placed no affirmative duty on the part of the Cheektowaga police to advise Plaintiff of his right to privately arrange for the removal of his vehicle from the scene of the accident, nor does Plaintiff reference any caselaw interpreting such policy as requiring such, deny that his vehicle was inoperable requiring towing, or allege the police prevented him from doing so.

Further, once the decision was made that Plaintiff's vehicle needed to be towed from the accident scene, a decision not challenged by Plaintiff, Defendants were required to conduct an inventory search pursuant to the Tow Policy, which provided that "[a]ll closed unlocked containers will be opened and inventoried."  Tow Policy, Inventory ¶ 4.  As the Tow Policy states, "[t]he purpose of the inventory is to protect against false claims of lost, stolen or vandalized property and to guard against storage of dangerous articles and protect the occupants/owners property."  *Id.* ¶ 2.  Thus, Plaintiff points to no material issue of fact as to whether Officer Gray properly followed the Tow Policy.

Moreover, despite the contradictions in the record as to the reason Plaintiff was arrested, including, most relevantly, whether his arrest was supported by probable cause, Discussion, *supra*, at 18-23, the record establishes, and Plaintiff does not dispute, that the search of Plaintiff's vehicle was not a search incident to his arrest but, rather, an inventory search conducted to protect Plaintiff's property from theft or damage, as well as the parties involved with towing Plaintiff's vehicle from claims for damages or theft of Plaintiff's property.  No probable cause was required for the

inventory search, *Colorado*, 479 U.S. at 373-74), which was conducted in accordance with the Tow Policy.  As such, there is no merit to Plaintiff's Fourteenth Amendment substantive due process claim, for which summary judgment should be GRANTED.

**8.     State Law Claims**

Plaintiff also asserts claims under New York common law for false arrest, unlawful arrest, unlawful imprisonment, and malicious prosecution.  Complaint ¶ 19. Defendants argue in support of summary judgment on each of these state law tort claims that Plaintiff is unable to establish the requisite elements of each tort. Defendants' Memorandum at 9.  In opposition to summary judgment, Plaintiff references the discrepancy between Defendants' assertion in support of summary judgment that Plaintiff was arrested for possession of the controlled substance and the Police Report statement that Plaintiff was arrested based on Davis's complaint that Plaintiff took Davis's personal property.  Plaintiff's Affidavit ¶¶  12-17.  Plaintiff also asserts Defendants "have failed to establish their right to summary judgment on any issue in the case. *Id.* ¶ 18.  In further support of summary judgment, Defendants argue Plaintiff has failed to sufficiently allege the elements of any state common law claim, offering only speculation and conclusory statements in support of such claims.  Defendants' Reply at 4-5.

**A.     False Arrest/Unlawful Imprisonment**

Plaintiff alleges claims for false arrest and unlawful imprisonment in violation of New York common law.  Complaint ¶ 19.  In support of summary judgment on these

claims, Defendants rely on the existence of probable cause as a complete defense to such claims. Defendants' Memorandum at 9-11. In opposition to summary judgment, Plaintiff argues that whether his arrest was supported by probable cause is an unresolved issue of material fact. Plaintiff's Memorandum at 4. In further support of summary judgment, Defendants assert Plaintiff has failed to dispute that his arrest was based on probable cause. Defendants' Reply at 4.

Relevant here, "[w]henever there has been an arrest and imprisonment without a warrant, the officer has acted extrajudicially and the presumption arises that such an arrest and imprisonment are unlawful." *Broughton v. State*, 335 N.E.2d 310, 315 (N.Y.) (citing cases), *cert. denied*, 423 U.S. 929 (1975). As such, "where the arrest or imprisonment is extrajudicial, that is, without legal process or color of legal authority, it is not necessary to allege want of probable cause in a false imprisonment action," *id.* (citing cases), and "the burden is on the defendant to prove the opposite." *Id.*

A claim for false arrest under New York law is substantially the same as a § 1983 claim for false arrest. *Gonzalez v. City of Schenectady*, 728 F.3d 149, 155 (2d Cir. 2013) (citing *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). "Under New York law, a plaintiff claiming false arrest must show, inter alia, that the defendant intentionally confined him without his consent." *Weyant*, 101 F.3d at 852 (citing *Broughton*, 335 N.E.2d at 313-14. Further, "'[t]he existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest, whether that action is brought under state law or under § 1983.'" *Id.* (quoting *Weyant*, 101 F.3d at 852, and citing *Broughton v. State*, 335 N.E.2d 310 (N.Y. 1975)). Nor is there any difference between a claim for false arrest and unlawful arrest. *Pope v. State*, 79 N.Y.S.2d 466,

471 (N.Y. Ct. Cl. 1948) ("False arrest is, of course, an unlawful arrest.").  Because there is a question of fact as to whether Plaintiff's arrest was supported by probable cause, see Discussion, *supra*, at 18-23, that same unresolved issue of fact precludes summary judgment on Plaintiff's common law false arrest/unlawful arrest claims, which should be DENIED.

Further, an "action for false imprisonment is derived from the ancient common-law action of trespass and protects the personal interest of freedom from restraint of movement." *Broughton*, 335 N.E.2d at 314.  The elements of a false imprisonment claim include (1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged.  *Id.*  Actual malice is not an element of a false imprisonment claim, *id.*; rather, "an unlawful detention gives rise to a cause of action for false imprisonment 'except where the confinement was by arrest under a valid process issues by a court having jurisdiction.'"  Because Defendant has failed to establish Plaintiff's arrest was supported by probable cause, as it Defendants' burden, *Broughton*, 335 N.E.2d at 315, summary judgment on Plaintiff's unlawful imprisonment claim should be DENIED.

## B.     Malicious Prosecution

Plaintiff asserts a common law claim for malicious prosecution under New York law.  Defendants argue in support of summary judgment on such claim that Plaintiff's arrest was supported by probable cause, and Plaintiff has not provided any evidence of actual malice to support such claim.  Defendants' Memorandum at 11-12.  In opposition

to summary judgment, Plaintiff maintains that the absence of probable cause for his arrest is circumstantial evidence of the requisite malice. Plaintiff's Memorandum at 4. In further support of summary judgment, Defendants reiterate Plaintiff's arrest was supported by probable cause, and there is no evidence of any actual malice in prosecuting Plaintiff. Defendants' Reply at 4.

"Under New York law, '[t]he elements of an action for malicious prosecution are (1) the initiation of a proceeding, (2) its termination favorable to plaintiff, (3) lack of probable cause, and (4) malice.'" *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003) (quoting *Colon v. City of New York*, 455 N.E.2d 1248, 1250 (N.Y. 1983)). The existence of probable cause is a complete defense to a claim of malicious prosecution, *id.*, and Defendants' argument in support of summary judgment on this claim largely rests on the existence of probable cause to support Plaintiff's arrest, and Defendants' assertion that Plaintiff has presented no evidence of malice. *See* Defendants' Memorandum at 11-12.

Because, however, as discussed, Discussion, *supra*, at 18-22, whether Plaintiff's arrest was supported by probable cause is a genuine issue of fact precluding summary judgment on Plaintiff's Fourteenth Amendment unlawful seizure and state common law unlawful arrest claims, Defendants' reliance on the existence of probable cause as negating Plaintiff's malicious prosecution claim is insufficient to support summary judgment for Defendants on this claim. Moreover, as with Plaintiff's malicious prosecution claim brought under § 1983, the record's silence as to why the underlying criminal charges against Plaintiff were dismissed renders the court unable to determine whether such charges were dismissed on the merits, such that it is not possible to find

the criminal proceedings terminated favorably to Plaintiff as necessary to establish the

second element of a malicious prosecution claim.  Discussion, *supra*, at 23-24.  *See*

*also Hygh*, 961 F.2d at 368.  Accordingly, because Plaintiff has not demonstrated that

the criminal proceedings against him were resolved in his favor based on a

determination on the merits, Plaintiff has not established the second element of a

malicious prosecution claim, requiring its dismissal.

     Summary judgment on Plaintiff's common law malicious prosecution claim should

be GRANTED in favor of Defendants.


     Summary judgment should thus be GRANTED as to Plaintiff's Fourth

Amendment and common law unlawful search and malicious prosecution claims, but

DENIED as to the Fourth Amendment and common law false arrest and false

imprisonment claims.

## **CONCLUSION**

     Based on the foregoing, Defendants' motion for summary judgment (Doc. No.

32), should be GRANTED in part and DENIED in part.

                                    Respectfully submitted,

                                 /s/ *Leslie G. Foschio*

                         _____

                             LESLIE G. FOSCHIO
               UNITED STATES MAGISTRATE JUDGE

DATED:       December 4, 2013
                Buffalo, New York

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(d) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**<u>Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.</u>**

*Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited*, 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiff and the Defendants.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      December 4, 2013
               Buffalo, New York